**NOT RECOMMENDED FOR PUBLICATION**
File Name:  17a0595n.06
No. 16-6604
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KOFI ALEXANDER,                                         )
                                                       )
    Plaintiff-Appellant,                              )
                                                       )
    v.                                                )       ON APPEAL FROM THE
                                                       )       UNITED STATES DISTRICT
EAGLE MANUFACTURING COMPANY, LLC,                      )       COURT FOR THE EASTERN
                                                       )       DISTRICT OF KENTUCKY
    Defendant-Appellee.                               )
                                                       )
                                                       )
                                                       )

BEFORE:  GIBBONS, ROGERS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  In August 2013, Kofi Alexander witnessed coworkers engaging in allegedly illegal activity at Eagle Manufacturing Company, LLC ("Eagle").  After objecting to such activity and reporting it to management, Alexander was fired. Alexander sued Eagle for wrongful discharge in violation of public policy under Kentucky law. The district court granted Eagle's motion to dismiss for failure to state a claim and denied Alexander leave to file a second amended complaint.  We affirm.

I.

Eagle is a manufacturing company that performs drilling work on engine blocks for various automobile manufacturers, including Ford Motor Company.  Eagle operates out of two neighboring buildings in Florence, Kentucky.  In the first building, Eagle cuts and drills the raw engine blocks and then inspects them for compliance with the manufacturers' specifications.  If

the drilled engine blocks are non-compliant, they are considered defective and are not to be shipped to the various manufacturers.

Because Ford had encountered problems with defective engine blocks from Eagle in the past, Ford installed its own temporary employees in the Eagle plant to inspect the engine blocks for compliance with Ford's specifications. If a drilled engine block is defective, the Ford employee paints the symbol "E-2" on the non-compliant block, which signifies that it is not to be shipped to Ford's manufacturing plants. If the Ford employee finds that a drilled engine block is compliant, a different symbol is painted on the block that indicates it can be shipped to Ford.

Once the engine blocks are cut, drilled, and inspected in the first building, they are then taken to a second building for final processing, inspection, and shipment. Alexander worked in this second building. He was responsible for a final compliance check to ensure that no defective engine blocks were shipped to the automobile manufacturers. Once Alexander signed off on the engine blocks, they were sent to a quality assurance employee for final inspection and eventual shipment to the appropriate automobile-manufacturing facility.

On Friday, August 30, 2013, Alexander was working the second shift at Eagle when he "noticed three first shift Eagle employees from the other building hanging around the loaded skids of engine blocks." DE 11, Page ID 73. Alexander subsequently went on break, but had to return to his work station when he forgot his car keys. When he returned to his station, Alexander witnessed one of the first-shift employees "wiping off E-2 codes from defective blocks with paint remover." *Id.* at Page ID 74. Alexander confronted the three first-shift employees and asked them "who was going to put their name on the documents, signing off on the shipment of the[] defective engine blocks, and misrepresenting the defective engine blocks as

2

good engine blocks." The first-shift supervisor replied, "I'll put my f—in name on them," and ordered Alexander to return to work. *Id.* at Page ID 75.

Soon after the incident, Alexander's boss, the second-shift supervisor, arrived at the facility and was informed that Alexander had cursed at the first-shift supervisor. Alexander denied the allegation and explained to the second-shift supervisor what he had witnessed. The second-shift supervisor told Alexander to "take the rest of the day off." *Id.* at Page ID 76. Prior to leaving, Alexander told one of the first-shift employees that he intended "to report the incident and the erasure of the E-2 codes from defective blocks to the HR department" when he returned to work the following Tuesday.[1] *Id.*

On Tuesday morning, "Alexander received a phone call from his supervisor telling him not to report to work, and that he had been fired." *Id.* In response, Alexander called Eagle's Human Resources ("HR") Department and told them "he was being fired for discovering and reporting the first shift's erasure of E-2 codes from defective engine blocks, and to prevent him from reporting the fraudulent activity to the HR department" when he returned to work. *Id.* Despite telling Alexander it would look into his allegations and follow-up, the HR Department allegedly never did so. Alexander continued to call Eagle representatives—including the head of Eagle's parent company—to protest his termination, but no one responded favorably.

On July 7, 2015, Alexander sued Eagle in federal court for wrongful discharge in violation of public policy under Kentucky law. The district court granted Eagle's motion to dismiss for failure to state a claim, finding that Alexander's termination did not satisfy either of the two public-policy exceptions to Kentucky's terminable-at-will employment doctrine. The court also denied Alexander leave to further amend his complaint because it found that any amendment would be futile. Alexander now appeals.

---

[1] Monday was the Labor Day holiday.

II.

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the complaint's factual content is sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Probability is not required, but there must be more "than a sheer possibility that a defendant has acted unlawfully." *Id.* In analyzing the defendant's motion, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

Alexander claims he was wrongfully discharged in violation of public policy under Kentucky law. In applying Kentucky law, we must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citation omitted). If the Kentucky Supreme Court has not addressed the precise issue, then we must predict how that court would rule if it were to confront the question. *See id.* In making this determination, we may "rely on the state's intermediate appellate court decisions, along with other persuasive authority." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (citation omitted). Indeed, "[a] federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (citation omitted). This includes both published and unpublished state court decisions. *Id.* (citing *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d

323, 328 (6th Cir. 2000)). As always, we must be wary of adopting "substantive innovation[s]" in state law. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). Thus, "when given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Id.* at 577 (citations omitted) (alteration in original).

Under Kentucky law, an employer may generally discharge an at-will employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citation omitted). Kentucky courts recognize a narrow exception where the discharge was "contrary to a fundamental and well-defined public policy as evidenced by [an] existing . . . constitutional or statutory provision." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Absent an "explicit legislative statement[] prohibiting the discharge[,]" only "two situations exist where 'grounds for discharging an employee are so contrary to public policy as to be actionable.'" *Id.* at 402 (quoting *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982)). The first is where the employee was discharged for "fail[ing] or refus[ing] to violate a law in the course of employment." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010). The second exists where the employee was discharged for exercising "a right conferred by [a] well-established legislative enactment." *Id.* Alexander does not identify, nor can we find, any statute expressly prohibiting his discharge. Thus, his wrongful-discharge claim must fit into one of the two public-policy exceptions enumerated above. Because Alexander disavowed any reliance on the second exception, we address the merits of his claim under only the first exception.[2]

---

[2] Although Alexander relies on both public-policy exceptions in his brief, counsel disclaimed any reliance on the second exception at oral argument.

Alexander argues that he was discharged for refusing to violate various Kentucky laws—namely, KRS § 517.020 (deceptive business practices); KRS § 517.050 (falsifying business records); KRS § 514.040 (theft by deception); and several provisions of Kentucky's Uniform Commercial Code. The district court found that Alexander could not satisfy this exception because he was never affirmatively requested to violate any law. Alexander concedes that he was never specifically asked to violate the law but argues that an affirmative request is not required. Instead, he contends it is enough that he witnessed unlawful activity within the company, objected to it, and proactively refused to participate in it. Although we are not convinced that the Kentucky Supreme Court would endorse the district court's "affirmative request" requirement, we agree that this exception is not broad enough to encompass Alexander's wrongful-discharge claim.

We note, initially, that the cases relied upon by the district court do not resolve the issue. In those cases, it is true, the court found a wrongful discharge under Kentucky law where an employee refused to comply with the employer's affirmative request that he or she violate the law. *See Burton v. Zwicker & Assocs., PSC*, 978 F. Supp. 2d 759, 768–69 (E.D. Ky. 2013); *Hill*, 327 S.W.3d at 422; *Ne. Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 447 (Ky. Ct. App. 2001); *Sparks v. Henson*, No. 2011-CA-423-MR, 2012 WL 5463877, at *7 (Ky. Ct. App. 2012). But those cases did not create an additional element—an explicit request from the employer that the employee violate the law—for the tort of wrongful discharge in Kentucky. Instead, the plaintiffs in those cases merely presented such evidence to prove their respective wrongful-discharge claims. *Cf. Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 (6th Cir. 2011) (recognizing that, although prior cases had involved an employer's explicit request to violate the law, the plaintiff

was not required to make such a showing to prevail on her wrongful-discharge claim under Michigan law).

As Eagle correctly notes, however, the Kentucky Court of Appeals has explicitly held that "an employee claiming wrongful discharge due to a refusal to violate the law must show an affirmative request to him/her by the employer to violate the law." *Welsh v. Phoenix Transp. Servs.*, No. 2007-CA-001231-MR, 2009 Ky. App. LEXIS 137, at *13 (Ky. Ct. App. Aug. 14, 2009). Several district courts, relying on *Welsh*, have held the same. *See, e.g.*, *Charles v. Print Fulfillment Servs., LLC*, No. 3:11-CV-00553-TBR, 2015 WL 5786817, at *7 (W.D. Ky. Sept. 30, 2015); *Burnett v. Pinelake Reg'l Hosp., LLC*, No. 5:09-cv-00024, 2010 WL 231741, at *2–3 (W.D. Ky. Jan. 14, 2010). And this court has suggested that such a request is necessary to invoke the exception. *See Burton v. Zwicker & Assoc., PSC*, 577 F. App'x 555, 560 (6th Cir. 2014) (noting that, in order to invoke the public-policy exception, "an employer must only request that the employee break the law"). But the Kentucky Supreme Court ordered *Welsh* not to be published when it denied discretionary review. *Welsh v. Phoenix Transp. Servs., LLC*, No. 2007-CA-001231-MR, 2009 WL 2475206 (Ky. Ct. App. Aug. 14, 2009). Accordingly, although this court may rely on *Welsh* as persuasive authority in deciding whether an affirmative request to violate the law is required under this exception, *see Ziegler*, 249 F.3d at 517; Ky. R. Civ. P. 76.28(4)(c), there may be "persuasive data" that the Kentucky Supreme Court would not require such a request, *Ziegler*, 249 F.3d at 517.[3]

---

[3] The only court to find a plausible claim for wrongful discharge under Kentucky law without an affirmative request to violate the law is *Miller v. Reminger Co., L.P.A.*, No. 3:11-cv-315-CRS, 2012 WL 2050239 (W.D. Ky. June 6, 2012). In *Miller*, the court found that a discharged attorney had pled allegations sufficient to support a wrongful-discharge claim under Kentucky law where, despite never being asked to participate, he refused to acquiesce in a law firm's illegal billing practice and was fired as a result. *Id.* at *7. But *Miller* is an unpublished district court decision that neither binds this court nor provides insight into how the Kentucky Supreme Court would decide the issue. And, given the sparseness of its reasoning, it provides little aid in discerning the contours of this exception. *Id.* Thus, its relevance here is limited, at best.

Presumably, the policy behind this exception is to prevent an employee from having to choose between losing his job and breaking the law. That policy is implicated, of course, when an employer affirmatively requests that the employee violate the law. *See, e.g.*, *Hill*, 327 S.W.3d at 422–23. But it is also implicated when an employee learns of illegal activity and, although not directly invited to participate by his employer, knows he will inevitably become complicit in the illegality by performing his normal work responsibilities. We think it likely that the Kentucky Supreme Court would apply this exception to not only the former situation, but also the latter. Unfortunately for Alexander, his situation fits into neither.

If Alexander had knowledge that the "E-2" engine blocks were defective but nonetheless signed off on them, it is plausible that he would be complicit in a violation of KRS § 517.050 (falsifying business records) and KRS § 514.040 (theft by deception). The problem for Alexander, however, is that it is not apparent from his complaint that he would have inevitably been forced to participate or become complicit in any illegal activity. For one, he does not allege that he was the only Eagle employee tasked with signing off on the engine blocks. In fact, the first-shift supervisor told Alexander he would sign the necessary paperwork for the allegedly defective "E-2" engine blocks. We cannot assume, therefore, that had Alexander not spoken up, he would have necessarily become a forced participant in the allegedly unlawful activity he witnessed. Moreover, the complaint does not plausibly suggest that the activity Alexander observed was anything more than an isolated incident. Thus, even if Alexander were the sole employee tasked with signing off on the engine blocks, it would be unreasonable to infer that by signing the requisite paperwork in the future, he would necessarily be participating in unlawful activity. And, finally, even if Eagle's erasure of the "E-2" codes was systematic, any future act of signing off on these defective engine blocks would not have made Alexander automatically

complicit in this illegal activity. Because both KRS § 517.050 and § 514.040 require criminal intent, any unwitting authorization of a defective engine block in the future would not have created criminal liability for Alexander. In short, although his coworkers may have been engaging in illegal activity, Alexander, himself, was never affirmatively asked to violate the law, nor did his position make it inevitable that he would be forced to do so. Thus, regardless of the precise contours of this exception, it is simply not broad enough to encompass Alexander's claim.

We recognize that this result, if his allegations are accepted, creates an inequity for Alexander. And, certainly, we do not condone Eagle's alleged conduct. In most states, an employee in Alexander's situation would be protected from termination. This protection generally comes in the form of a whistleblower statute, which encourages employees who uncover unlawful activity in the workplace to report such activity, without fear of reprisal. *See, e.g.*, Tenn. Code. Ann. § 50-1-304(b). Although Kentucky has a whistleblower statute covering public employees, *see* KRS § 61.102, the Kentucky legislature, whatever its motives, has not extended this protection to private employees, *see Beach v. ResCare, Inc.*, No. 2004-CA-002559-MR, 2005 WL 2174404, at *3 (Ky. Ct. App. Sept. 9, 2005). Instead, private employees, like Alexander, are left with Kentucky's default rule, which allows them to be fired "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone*, 666 S.W.2d at 731. The Kentucky Supreme Court has, of course, crafted two exceptions to this general rule, but those exceptions are "narrow[]." *Grzyb*, 700 S.W.2d at 400. And, importantly, those exceptions do not include the internal reporting of unlawful activity within a company by a private employee. In essence, then, Alexander asks us to create a third exception to Kentucky's employment-at-will doctrine. But, because neither the Kentucky legislature nor the Kentucky

courts have seen fit to do so, our hands are tied. We therefore affirm the district court's dismissal of Alexander's wrongful-discharge claim.

III.

The district court also denied Alexander further leave to amend his complaint, concluding that the amendment was futile because Alexander failed to provide details regarding his proposed amendment. When a district court bases its denial of leave to amend on futility grounds, we review that decision *de novo*. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 671 (6th Cir. 2003) (citing *Ziegler*, 249 F.3d at 518).

Federal Rule of Civil Procedure 15(a)(2) provides that the district court "should freely give leave [to amend a complaint] when justice so requires." Although Rule 15(a)(2) evinces a liberal amendment policy, "the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) (citation omitted). Pertinent factors in deciding whether to grant leave to amend include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citation omitted).

Because Alexander failed to follow the proper procedure for seeking leave to amend, the district court did not err in denying Alexander's request for leave to amend his complaint.[4] In his memorandum in opposition to Eagle's motion to dismiss, Alexander stated, "Should the Court find merit to any of the defendant's arguments, the appropriate course of action . . . would be to grant Alexander leave to file a second amended complaint, rather than dismissing his complaint

---

[4] Although the district court rested its denial on futility grounds, the proper basis for denying Alexander's request was, more appropriately, lack of notice to Eagle. *See Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761, at *6 (6th Cir. 2000) (unpublished table decision). Nevertheless, we can "affirm for any reason presented in the record." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (citation omitted).

altogether." DE 15, Page ID 120–21. But Alexander did not identify what amendments he would make to his complaint, nor did he attach a copy of the amended complaint to his brief. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Normally, a party seeking an amendment should attach a copy of the amended complaint."). As we have previously recognized, "[a] request for leave to amend[,] 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *La. Sch.Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)) (omission in original). If Alexander wanted an opportunity to amend his complaint further, it was his responsibility to provide details concerning the proposed amendments. Absent such a showing, Alexander was not entitled to an advisory opinion from the district court informing him of the deficiencies in his complaint and allowing him an opportunity to cure those deficiencies. *Id.* Accordingly, the district court did not err in denying Alexander's request for leave to amend.

IV.

For the foregoing reasons, we affirm both the district court's dismissal of Alexander's wrongful-discharge claim and its order denying him leave to amend his complaint.

ROGERS, Circuit Judge, dissenting. The majority very properly concludes that, when an employee's course of business makes it inevitable that he will violate the law in furtherance of his duties, and he proactively refuses to do so, his refusal implicates the core concern of Kentucky's refusal-to-violate theory of wrongful discharge—preventing employees from being harmed by the choice between following the law and being out of work. However, I disagree that Alexander's complaint does not state a plausible claim under this theory of wrongful discharge.

It is reasonable to infer from Alexander's amended complaint that continuing along his regular course of employment would have required him to illegally sign off on defective engine blocks, thus presenting Alexander with an ultimatum—refuse or be fired. Alexander alleged that his main task at work was to ensure no defective engine blocks were shipped to Eagle's manufacturer customers. By alleging that first-shift employees were attempting "to get him to unwittingly sign off on the shipment" of defective blocks, Alexander implies that, had he conducted business as usual, he would have been faced with inspecting the very engine blocks that the first-shift employees tampered with. Furthermore, reading the complaint in the light most favorable to Alexander, it is reasonable to infer that the first-shift employees' behavior was likely not an isolated incident. Thus, had Alexander continued signing off on Ford engine blocks that were not marked with "E-2" as non-defective blocks, knowing that employees were masking defective blocks before the blocks reached his station, he would have been aiding an illegal scheme. Finally, a reasonable jury could take Alexander's asking the first-shift shipping coordinator, "who was going to put their name on the documents, signing off on the shipment of these defective engine blocks, and misrepresenting the defective engine blocks as good engine

blocks," as a proactive refusal to comply—a refusal to violate the law that is protected from retaliation.

Thus, Alexander's amended complaint alleges a plausible claim for wrongful termination in violation of public policy under Kentucky law.  I would therefore reverse the district court's judgment granting Eagle's motion to dismiss.